## SUN–HERALD CORPORATION v. DUGGAN.

## NEWS PUB. CO. OF BALTIMORE CITY v. SAME.

District Court, S. D. New York.
July 25, 1945.

DeForest & Elder, of New York City (Neil P. Cullom and Eli J. Blair, both of New York City, of counsel), for plaintiffs.

John F. X. McGohey, U. S. Atty., of New York City (Laurence H. Axman, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge.

. These are separate actions brought by Sun-Herald Corporation (hereinafter referred to as "Sun-Herald Co.") and News Publishing Company of Baltimore City (hereinafter referred to as "News Co.") for the refund of income taxes alleged to have been illegally collected for the year 1930. Both actions were commenced on August 6, 1942. In the Sun-Herald Co. action, a recovery of $15,073.18, with interest, is sought, represented by a tax payment of $14,193.57 on September 22, 1931, and interest payments of $876.61 on October 18, 1932, and $3 on January 26, 1933. In the News Co. action, the prayer is for $39,809.-79, with interest, represented by a tax payment of $16,153.92 on September 22, 1931, an interest payment of $1,001.10 on October 18, 1932, and a tax and interest payment of $22,654.77 on January 27, 1933.

The actions grow out of the administration of the estate of Frank A. Munsey, who died on December 22, 1925, leaving his entire residuary estate to the Metropolitan Museum of Art in the City of New York. The complaints allege that the income upon which the taxes were assessed and collected belonged to the Museum, and was exempt from taxation. The defendant in his answers not only denies that the income was exempt from taxation, but alleges that the claims for refund are insufficient to support the actions.

The actions involve substantially the same facts, and were tried together. They will accordingly be disposed of in one opinion.

Mr. Munsey's will was admitted to probate on January 11, 1926, and letters testamentary were thereupon issued to William T. Dewart, Richard H. Titherington and Guaranty Trust Company of New York. By his will, Mr. Munsey, after making provision for a number of general legacies and some trusts, left his entire residuary estate to the Metropolitan Museum of Art in the City of New York. After the probate of the will, and on December 28, 1927, the Museum caused Museum Estates, Inc., to be incorporated in New York for the purpose of taking over and liquidating Mr. Munsey's residuary estate. It is conceded by the defendant that both the Museum and Museum Estates, Inc., are corporations exempt by law from the payment of income taxes under the Revenue Act of 1928.

During his lifetime, Mr. Munsey's assets were, for the most part, held in the names of various corporations, the stock of all such corporations, including that of the plaintiffs, being held by the Frank A. Munsey Company, a New York corporation, all of the stock of which was in turn held by Mr. Munsey.

The Sun-Herald Co. was organized in New York on January 28, 1920, with an authorized capital of 1000 shares without par value, and for a time it operated the New York Herald and the New York Sun, newspapers published in New York City. By the end of 1924, the corporation had disposed of the New York Sun, and was continuing the operation of the New York Herald. On December 31, 1924, it sold the New York Herald to the New York Tribune, Inc., receiving in payment ten promissory notes, each for $450,000, aggregating $4,500,000. These notes carried interest at the rate of 5% per annum, and were payable serially over a period of years to and including March 18, 1939.

The News Co. was organized in Maryland on February 28, 1908, with an authorized capital of 20 shares of a par value of $50 each, and for some years it operated the Baltimore News and the Baltimore American, newspapers published in Baltimore. During the year 1923, the corporation sold both newspapers to Mr. Hearst, and on December 31, 1923, received in payment ten promissory notes of the Evening News Company, each for $180,000, aggregating $1,800,000, and ten promissory notes of the Baltimore Publishing Company, each for $120,000, aggregating $1,-200,000. All of these notes were endorsed

by Mr. Hearst, carried interest at the rate of 6% per annum, and were payable serially over a period of years to and including March 31, 1935.

On the sale of the newspaper properties, News Co. made a taxable profit of $685,-048.46, which was set up on its books as a deferred profit to be returned in ten annual installments at the rate of $68,504.-84 a year. The account on the books shows deductions of $68,504.84 for each year from 1925 through 1930, with an unrealized balance of $342,524.23 at the end of 1930, which was later transferred to Museum Estates, Inc., as of December 18, 1930. This transfer closed the transaction with respect to the notes, and the Bureau accordingly proposed a substantial additional tax to cover the unreturned profit, which was protested by News Co. on the asserted ground that the fair market value of the notes at the time of the transfer on December 18, 1930, was considerably less than their face value. A conference was thereafter held on November 18, 1932, between Mr. Thorne, attorney for News Co., and representatives of the Bureau, at which an adjustment was reached, and an agreement entered into in which News Co. consented to an additional tax for 1930 of $20,492.91 on account of the deferred profit on the notes. This amount of $20,492.91, with interest of $2,161.86, constituted the payment of $22,654.77 on January 27, 1933.

In the administration of Mr. Munsey's estate, the executors generally disregarded the corporate entities of the different corporations, and treated the assets largely as the personal assets of Mr. Munsey. By the end of 1927 the liquidation of the estate had proceeded to such an extent that the executors were ready to transfer to the Museum the entire residuary estate upon receipt of indemnity with respect to the outstanding indebtedness. At that time, the unpaid Tribune notes held by Sun-Herald Co. aggregated $3,150,000 face amount, and the unpaid Evening News and Baltimore Publishing notes held by News Co. aggregated $2,400,000 face amount. The News Co. also owned a parcel of real estate in Baltimore known as the Centre Street property, which it carried on its books at $206,195.13, before depreciation.

On February 29, 1928, a meeting was held at the office of the attorneys for the individual executors, which was attended by the executors, their attorneys, and by the Museum and its representatives and attorneys. At this meeting all of the property comprising the residuary estate was transferred to the Museum. An agreement was then entered into between the executors and the Museum, in which the Museum receipted for the securities and properties turned over, as specified in an attached schedule marked Schedule A. Sheet 2 of this schedule lists 1000 shares of Sun-Herald Co. stock at $3,150,000, and 20 shares of News Co. stock at $3,148,434, but the notes payable to the two corporations are neither specified nor referred to in any way. These notes were, however, delivered unendorsed to R. E. Cocks, treasurer of Museum Estates, Inc., and receipted for by him; on the following day, March 1, 1928, they were placed in a safe-keeping account in the name of Museum Estates, Inc., in the Guaranty Trust Company, where they remained until paid.

Soon after February 29, 1928, the New York Tribune, Inc., sent to Frank A. Munsey Company two checks aggregating $141,-202.41 to apply on the Tribune Notes. One of these checks was made payable to Sun-Herald Co. and the other to Frank A. Munsey Company. The checks were immediately endorsed to the order of Museum Estates, Inc., and forwarded to Mr. Cocks, the treasurer of the corporation. At the same time, the New York Tribune, Inc., was advised by Frank A. Munsey Company to make future checks "payable to the Museum Estates Inc., and deliver them to Mr. Cocks." This was followed a few days later by a letter from Mr. Cocks to the New York Tribune, Inc., advising that the Tribune notes were being held by the Guaranty Trust Company for Museum Estates, Inc., and that "future communications relating to these notes should be addressed to Museum Estates, Inc." In accordance with these instructions, the next check on account of the notes was made payable to Museum Estates, Inc., but subsequent checks were made payable to Sun-Herald Co. and immediately endorsed by that corporation and turned over to Museum Estates, Inc.

On April 5, 1928, Mr. Cocks advised the makers of the notes payable to News Co. that the "balance due on these notes has been assigned to the Museum Estates, Inc.," and requested that future communications relating thereto be sent "in care of our Personal Trust Department." This notice was apparently ignored, for subsequent payments on the notes were made by

checks to News Co., which were promptly endorsed by that corporation and turned over to Museum Estates, Inc.

All payments of principal and interest on the Tribune notes after February 29, 1928, and until December 18, 1930, are recorded in the books of Sun-Herald Co. The books of Museum Estates, Inc., likewise show that all of such payments were received during that period from Sun-Herald Co. Moreover, the books of Sun-Herald Co. (Installment Notes Receivable Account) show that the notes were carried as assets of the corporation until December 18, 1930, when the notes remaining unpaid were endorsed over to Museum Estates, Inc. The income tax returns of Sun-Herald Co. for 1928, 1929 and 1930 record the interest payments on the notes for those years as having been received by Sun-Herald Co., and the inventory figures appearing in the returns include the amounts unpaid on the notes. The books of News Co. similarly record the receipt of all payments of principal and interest on the Evening News and Baltimore Publishing notes to December 18, 1930, and these entries are in turn supported by the books of Museum Estates, Inc., which show the receipt of the various items during the period from News Co. The income tax returns of News Co. for 1928, 1929 and 1930 likewise record the interest payments on the notes as having been received by News Co., and include in the inventory figures the amounts unpaid on the notes.

On December 18, 1930, the directors of Sun-Herald Co. passed a resolution reciting that "the sole assets of the Sun-Herald Corporation consist of certain notes of New York Tribune, Inc., amounting to two million two hundred and fifty thousand dollars ($2,250,000), with interest accrued thereon, and certain indebtedness owed to the corporation by Museum Estates Inc.," and that "it is desired to dissolve the Sun-Herald Corporation and to turn over its assets to Museum Estates, Inc.," and directing that the corporation be dissolved and that all of the notes of the New York Tribune, Inc., aggregating $2,250,000, with accrued interest, be assigned and transferred to Museum Estates, Inc. Following this action, the notes were endorsed to Museum Estates, Inc., and appropriate entries to that effect were made on both the Sun-Herald and the Museum Estates books.

The directors of News Co. also met on December 18, 1930, and passed a resolution similar to that adopted by the directors of Sun-Herald Co. This resolution recites that the assets of News Co. consist of

| | |
|---|---:|
| Notes of Evening News Company | $ 900,000.00 |
| Notes of Baltimore Publishing | 600,000.00 |
| Real Estate at Centre St., Baltimore, valued at | 206,195.13 |
| 5 shares Merchants & Manufacturers Association Building Inc. preferred stock | 500.00 |
| Owed by Museum Estates, Inc. | 2,700,765.06 |

and, further, that "it is desired to turn over to Museum Estates, Inc., the said notes of the Evening News Company and of the Baltimore Publishing Company," and that "the remaining assets of the Corporation will be amply sufficient to take care of its liabilities." It was then resolved that there be assigned and transferred to Museum Estates, Inc., "all the said notes of the Evening News Company, aggregating $900,000, and all the said notes of the Baltimore Publishing Company, aggregating $600,000, with accrued interest." The notes were thereupon endorsed to Museum Estates, Inc., and the necessary entries were made on the books of News Co. and Museum Estates, Inc., to reflect the transaction.

During the period from February 29, 1928, to December 18, 1930, Sun-Herald Co. had no employees or salaried officers, and was for all practical purposes out of business, except insofar as it was necessary to handle the payments on the Tribune notes. The income tax return of the corporation for 1930 shows net income of $118,279.75, upon which a tax of $14,193.57 was assessed. This tax, with interest, was paid by Museum Estates, Inc. The situation with respect to News Co. during the period was similar to that of Sun-Herald Co., except that News Co. continued to own the Centre Street property in Baltimore, from which it derived some revenue. The 1930 return of the corporation shows net income of $134,615.96, upon which a tax of $16,153.92 was assessed. This tax, with interest, and the additional tax of $20,492.91, with interest, were also paid by Museum Estates, Inc.

Separate claims for refund of the taxes were filed by the two corporations, respectively, on May 23, 1933, and it is con-

ceded that these claims were timely filed. Neither claim was, however, allowed or disallowed, and on March 30, 1936, after the time for filing claims for refund had expired, additional claims, each labelled "Amended claim," were filed. The defendant insists that these later claims are not proper amendments of the original claims, and should be ignored.

There is little to distinguish between the claims for refund of the two corporations, and it will be sufficient for the present purpose merely to refer to the claims filed by Sun-Herald Co. The pertinent parts of the original claim of that corporation are as follows:

"The late Frank A. Munscy * * * owned all of the stock of the above named corporation, * * * through the medium of the Frank A. Munsey Co., a holding company wholly owned by him. He left his entire residuary estate to the Metropolitan Museum of Art, and on March 1, 1928, all of the said stock * * * was transferred and turned over * * * to Museum Estates Inc. * * * On and after said date, March 1, 1928, it had no property or assets of any kind whatsoever, except notes which had been received by it on the sale of its newspaper property, of which there were outstanding on March 1, 1928, $3,150,000. On and after the said date, March 1, 1928, the sole function and activity of the said corporation was to collect the interest and principal of the said notes and turn over the same to the Museum Estates, Inc. * * *; its officers had no function or duty except to endorse over to the Museum Estates Inc. the checks received by it * * *. It was merely a conduit through which the Metropolitan Museum received the income of the holdings which actually belonged to the Museum Estates Inc. * * *. The Sun-Herald Corporation was, therefore, an exempt corporation."

The so-called amended claim of Sun-Herald Co. eliminates the allegation of the original claim that after March 1, 1928, Sun-Herald Co. "had no property or assets of any kind whatsoever, *except notes * * *, of which there were outstanding on March 1, 1928, $3,150,000,*" and substitutes in its place an allegation that on or about February 29, 1928, the executors turned over to Museum Estates, Inc., all of the stock of Sun-Herald Co. *"and at that time the Museum Estates, Inc. received the notes * * * pursuant to an agreement*

*and understanding that the Sun-Herald Corporation would collect the interest and principal of the notes for the use and benefit of the Metropolitan Museum of Art and its holding company, Museum Estates, Inc."* There is a further allegation that after February 29, 1928, Sun-Herald Co. "was in substance and effect acting as trustee * * * and a mere conduit * * *."

■ 1. The first question is whether the so-called amended claims are proper amendments of the original claims. These amended claims were filed on March 30, 1936, after the two year limitation period had expired, Rev. Act of 1928, § 322(b) (1), 26 U.S.C.A. Int.Rev.Acts, page 436; they cannot, therefore, be sustained as independent claims. I do not think, either, that they can be upheld as proper amendments of the original claims. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; Pink v. United States, 2 Cir., 105 F.2d 183; Socony Vacuum Oil Co. v. United States, 2 Cir., 146 F.2d 853. The original claims are specific and allege that the plaintiff corporations owned the notes which produced the taxable income. The amended claims omit this allegation and allege that on February 29, 1928, the Munsey executors turned over to Museum Estates, Inc. all of the stock of the two corporations, and at the same time the Museum Estates, Inc., received the notes held by the respective corporations pursuant to an agreement and understanding that each corporation would collect the interest and principal of the notes for the use and benefit of the Museum. It will thus be seen that the amended claims allege entirely new facts which were not present in the original claims. Whether a second claim for refund may be treated as an amendment of a pending original claim "depends upon the facts which an investigation of the original claim would disclose." Pink v. United States, supra, 105 F.2d at page 187; Socony Vacuum Oil Co. v. United States, supra, 146 F.2d at page 854. Here, an investigation of the original claims would not have disclosed the new facts alleged in the amended claims, but, on the contrary, would have shown from the books, records and income tax returns of the plaintiff corporations, as well as from the books of the Museum Estates, Inc., that the notes were owned by the plaintiff corporations.

■■ 2. The next question concerns the tax and interest payment of $22,654.77 made

on January 27, 1933, on account of the closing of the installment deferred profit on the notes received by News Co. on the sale of the newspaper properties in 1923. The amount of this tax was determined by adjustment on November 18, 1932, and News Co. at that time entered into an agreement consenting to the assessment and collection of an additional tax for 1930 of $20,492.91, together with interest. I think this was a binding agreement on the part of News Co.; but in any event I am satisfied that there can be no recovery of the payment inasmuch as the claim for refund failed to set forth any facts to substantiate the claim.

3. The question remains whether the actions can be maintained on the basis of the original claims for refund. It is the contention of the plaintiffs on this branch of the cases that the income from the notes belonged to the Museum and was exempt from taxation; and, further, that the plaintiffs were mere conduits through which the income flowed to the Museum. This same contention was pressed by Sun-Herald Co. in the former litigation involving the taxes for 1928 and 1929, and was rejected by the Circuit Court of Appeals. Sun-Herald Corporation v. Duggan, 2 Cir., 73 F.2d 298, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251. In that case, the claims for refund were identical with the original claims in the present actions, and it was held (1) that Sun-Herald Co. was not entitled to exemption under section 103(14) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, § 101(14), as a corporation "organized for the exclusive purpose of holding title to property," and (2) that there was no warrant for treating the income of Sun-Herald Co. as that of Museum Estates, Inc. The part of the opinion dealing with the second ground of the decision is as follows at page 300 of 73 F.2d:

"It is argued by the taxpayer that Slocum v. Bowers, D.C., 15 F.2d 400, affirmed, C.C.A., 20 F.2d 350, and Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564, and Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99, govern the present case, and that because the Sun-Herald Corporation was a holding company for the Metropolitan Museum of Art (an organization itself exempt from tax) it falls within section 103(14) of the statute. But in both Slocum v. Bowers and Lederer v. Stockton it was the income of estates which

had accumulated in the hands of executors or trustees that was held to be free from taxation. Here, however, we do not have the case of a fiduciary and a beneficiary who is the equitable owner of income of a trust, but of the Sun-Herald Corporation, a business corporation that is an entity entirely separate from Museum Estates, Inc. We are not justified in treating the two as identical or the income of Sun-Herald Corporation as that of Museum Estates, Inc. The income of the Sun-Herald must be regarded as that of any corporation organized to conduct a newspaper business."

This decision was later qualified in Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776, insofar as it held that the word "organized" as used in the statute meant "incorporated," but the decision in other respects was left undisturbed. Indeed, it was expressly stated at page 778 of 96 F.2d of the opinion in the Roche's Beach case that: "The decision in the Duggan case was correct, for the real issue was whether a subsequently formed purpose to hold the property of a business corporation for an exempt institution to which all its stock had been given entitled it to exemption under section 103(14)." I think, therefore, that the Sun-Herald case is controlling on both grounds of decision with respect to the issues in the present actions.

It is, however, insisted by the plaintiffs that the record in the present actions differs from that in the former case in that it shows that after February 29, 1928, the notes which produced the taxed income were actually owned by Museum Estates, Inc., and not by the plaintiff corporations. There are, I think, two answers to this contention. In the first place, the original claims for refund in the present actions are identical with the claims for refund involved in the former case, and these claims allege that the ownership of the notes was after March 1, 1928, in the plaintiff corporations. In the second place, the evidence in the present actions was that the unendorsed notes were physically delivered to Museum Estates, Inc., on February 29, 1928, but that no actual transfer of ownership was made until after the resolutions directing the transfer were passed by both corporations on December 18, 1930. I do not believe that it was mere inadvertence that the notes were not endorsed to Museum Estates, Inc., on February 29, 1928, for the failure to list the

notes in the schedule attached to the agreement of that date, and the subsequent book entries, cannot be reconciled with any theory other than that it was intended at the time of the transfer of the residuary estate to Museum Estates, Inc., on February 29, 1928, to leave the ownership of the notes in the plaintiff corporations. I find as a fact, therefore, that in 1930 the ownership of the notes which produced the taxed income was in the plaintiff corporations just as alleged in the original claims for refund.

There may accordingly be a judgment for the defendant in each of the actions dismissing the complaint, with costs.